Matter of Ibhawa v New York State Div. of Human Rights (2024 NY Slip Op 05872)

Matter of Ibhawa v New York State Div. of Human Rights

2024 NY Slip Op 05872

Decided on November 26, 2024

Court of Appeals

Halligan

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 26, 2024

No. 100 

[*1]Ibhawa, Appellant,
v
New York State Division of Human Rights et al., Respondents.

Donna A. Milling, for appellant. 
Aaron M. Woskoff, for respondent New York State Division of Human Rights.
Kathleen H. McGraw and Erin S. Torcello, for respondent Diocese of Buffalo.

HALLIGAN, J.

The New York State Division of Human Rights dismissed Victor Ibhawa's hostile work environment claim against his former employer, concluding that the "ministerial exception" that flows from the First Amendment to the U.S. Constitution deprived the agency of jurisdiction over Ibhawa's complaint. But the U.S. Supreme Court has expressly held that the ministerial exception is an affirmative defense, not a jurisdictional bar, and thus the agency's determination was affected by an error of law. We therefore reverse the order of the Appellate Division and remit with directions to remand Ibhawa's hostile work environment claim to the agency for further proceedings consistent with this opinion.
I.
In 2016, the Diocese of Buffalo (the Diocese) hired Ibhawa—a Black, Nigerian Catholic priest—to serve as Parish Administrator of the Blessed Trinity Church in Buffalo. Ibhawa was reappointed in January 2019 to an additional three-year term, but on September 28, 2020, the Diocese prematurely terminated his employment.
Ibhawa filed an employment complaint with the New York State Division of Human Rights (DHR) in November 2020, claiming that the Diocese had engaged in discriminatory employment practices in violation of the New York Human Rights Law (see Executive Law art 15). Ibhawa alleged that he had experienced racial [*2]discrimination at the Diocese, including from an employee who directed a racial slur at him and a parishioner who made xenophobic remarks to him. He further alleged that the Diocesan officials to whom he reported the incidents declined to investigate them, questioned his decision to terminate the employee who had used a racial slur, and made "highly insulting and offensive" remarks about "foreign priests." At a subsequent meeting, two Diocesan officials offered to buy Ibhawa a plane ticket to Nigeria and told him that the "Bishop could remove [his] faculties." Shortly afterwards, the Diocese informed Ibhawa that his employment had been terminated and his priestly faculties removed, which meant that that he could not apply for a position as a priest in the Diocese. The Diocese eventually hired a white priest to replace him. Based on these assertions, Ibhawa alleged claims of hostile work environment and unlawful termination on the basis of race and national origin. He sought, among other remedies, compensatory and punitive damages.
The Diocese denied Ibhawa's allegations and raised three affirmative defenses to his claims. Among these defenses was the assertion that Ibhawa's entire complaint fell within the "ministerial exception" because the Diocese is a religious institution and Ibhawa qualified as a "minister" for purposes of the exception.
The ministerial exception is a doctrine grounded in the First Amendment to the U.S. Constitution and recognized by the United States Supreme Court in two recent decisions: Hosanna-Tabor Evangelical Lutheran Church and School v EEOC (565 US 171 [2012]) and Our Lady of Guadalupe School v Morrissey-Berru (591 US 732 [2020]). Those decisions explain that the ministerial exception "protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" by supplying an affirmative defense to claims brought under "laws governing the employment relationship between a religious institution and certain key employees" (Our Lady of Guadalupe, 591 US at 737 [internal quotation marks omitted]; see also Hosanna-Tabor, 565 US at 194-195 & 195 n 4). But Hosanna-Tabor and Our Lady of Guadalupe involved only unlawful termination claims against religious institutions, not hostile work environment claims, and the Court left open the "applicability" of the ministerial exception to "other types of suits" (Hosanna-Tabor, 565 US at 196).
The Diocese also raised two statutory affirmative defenses based on the Human Rights Law. The first defense relied on subdivision 296 (11), which provides that
"[n]othing contained in this section shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization, from limiting employment or sales or rental of housing accommodations or admission to or giving preference to persons of the same religion or denomination or from taking such action as is calculated by such organization to promote the religious principles for which it is established or maintained" (Executive Law § 296 [11]).
The Diocese argued that Ibhawa's complaint should be dismissed because its "determination as to who will lead a congregation and teach its faith clearly falls within this [statutory] exception." It asserted in its second defense that as a clergy member, Ibhawa was not an "employee" entitled to bring a claim under the Human Rights Law.
Ibhawa responded that none of the Diocese's affirmative defenses applied. He contended in cursory terms that the ministerial exception did not apply to his hostile work environment claim, but focused primarily upon other issues.
DHR's Regional Director then released a brief report summarizing Ibhawa's complaint and the agency's findings. The report noted the parties' respective positions on the ministerial exception and that the parties did not dispute Ibhawa was a priest and "the pastor of the church in his role as parish administrator." The report thus concluded that Ibhawa "comes under the ministerial exception relative to the first amendment of the U.S. Constitution, and [DHR] cannot proceed as it lacks jurisdiction over this matter." The only explanation given for this result was an assertion that "[t]he ministerial exception grants a church/religion the right to choose (or terminate) ministers or persons who serve in a similar religious role without governmental interference, including discrimination claims." No mention was made of the statutory defenses raised by the Diocese.
DHR then issued an order dismissing Ibhawa's complaint for "lack of jurisdiction." The order stated only that "[Ibhawa], a priest serving as the pastor (Parish Administrator) of a church comes under the ministerial exception (relative to the first amendment of the U.S. Constitution). [DHR] cannot interfere with the right of a church or other [*3]religious group, to determine who will work for them in this type of religious role." The order did not specifically address the question reserved in Hosanna-Tabor or the Diocese's statutory defenses.
Ibhawa petitioned New York Supreme Court for an order pursuant to Human Rights Law § 298 reversing DHR's dismissal of his complaint, which the court granted in part. It found that the Diocese is a religious institution and that Ibhawa worked in a ministerial capacity. Although the court determined that Ibhawa's unlawful termination claim was properly dismissed, it noted that "there is a question as to whether the ministerial exception bars [Ibhawa's] hostile work environment claim, and the relevant law is unsettled on that issue." The court concluded that "the absence of controlling authority does not constitute a rational basis to determine that the ministerial exception barred review of [Ibhawa's] hostile work environment claim," and, accordingly, that DHR's determination on that claim was affected by an error of law. It thus reversed DHR's order insofar as it dismissed the hostile work environment claim and remanded the complaint to DHR.
Both DHR and the Diocese appealed [FN1]. The Appellate Division held that Supreme Court did not give "requisite deference" to DHR, stating instead that the agency's "determination is entitled to considerable deference given its expertise in evaluating discrimination claims" (217 AD3d 1500, 1501 [4th Dept 2023] [internal quotation marks omitted]). Applying that standard of review, the Court concluded that DHR's "determination with respect to the hostile work environment claim is not arbitrary and capricious or affected by an error of law" because "there is no controlling . . . precedent and the federal courts that have addressed the issue are divided on the extent to which the ministerial exception applies to [such] claims" (id., citing Demkovich v St. Andrew the Apostle Parish, Calumet City, 3 F4th 968, 979 [7th Cir 2021 en banc] [concluding that the exception applied to a hostile work environment claim] and Elvig v Calvin Presbyterian Church, 375 F3d 951, 964 [9th Cir 2004] [concluding that a hostile work environment claim could survive a religious institution's motion to dismiss based on the ministerial exception]). The Appellate Division accordingly reversed the order of Supreme Court insofar as appealed from, dismissed Ibhawa's petition in its entirety, and reinstated DHR's dismissal of the hostile work environment claim.
Ibhawa appealed to this Court as of right pursuant to CPLR 5601 (b) (1) and moved for leave to appeal from the order of the Appellate Division. After accepting further briefing from the parties as part of our jurisdictional inquiry, we denied Ibhawa's motion for leave to appeal as unnecessary and the appeal proceeded in the normal course (see 40 NY3d 1088 [2024]).
II. We must decide whether DHR improperly concluded that the ministerial exception prohibited it from exercising jurisdiction over Ibhawa's hostile work environment claim. Our review of DHR's determination is "limited to the grounds invoked by the agency" (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]). "If those grounds are inadequate or improper," we are "powerless to affirm the administrative action by substituting what [we] consider[] to be a more adequate or proper basis" (id. [internal quotation marks omitted]).
Human Rights Law § 298, which authorized Ibhawa's petition to Supreme Court, supplies the standard under which we review this appeal. That statute permits "appellate review in the same manner and form and with the same effect as provided for appeals from a judgment in a special proceeding" (Executive Law § 298). Accordingly, our task is to decide whether DHR's determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 204 [1994], quoting CPLR 7803 [3]). Because the issue presented is purely a question of law, "there is little basis to rely on any special competence or expertise of the administrative agency," and we "need not accord any deference to the agency's determination" (Matter of Jun Wang v James, 40 NY3d 497, 502 [2023] [internal quotation marks omitted]; see also id. at 502 n 1).[FN2]
DHR's order dismissing Ibhawa's hostile work environment claim was affected by an error of law. After noting the parties' agreement that Ibhawa was "a priest serving as the pastor (Parish Administrator) of a church," DHR found that his complaint "comes under the ministerial exception (relative to the first amendment of the U.S. Constitution)." On that basis, DHR concluded that it lacked jurisdiction over Ibhawa's claims. This determination was contrary to the U.S. Supreme Court's express holding that the "exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar" (Hosanna-Tabor, 565 US at 195 n 4).
DHR and the Diocese argue that we should overlook the agency's error of law because DHR would still have dismissed Ibhawa's claims if it had properly understood the ministerial exception as an affirmative defense. But the distinction matters. Hosanna-Tabor explained that because the question presented by the ministerial exception "is whether the allegations the plaintiff makes entitle him to relief, not whether the court has power to hear the case," it is an affirmative defense, not a jurisdictional bar (id. [internal quotation marks and alterations omitted]; compare Hunt v Hunt, 72 NY 217, 229 [1878] [explaining that subject matter jurisdiction is a "power to adjudge concerning the general question involved" in a dispute, "and is not dependent upon the state of facts which may appear in a particular case"], with Whitlatch v Fid. & Cas. Co. of New York, 149 NY 45, 50 [1896] [explaining that an affirmative defense that seeks to defeat the "cause of action alleged . . . must be pleaded and proved by the defendant"]). Thus, once the Diocese raised the ministerial exception as one of several affirmative defenses, the question confronting DHR was not whether the exception limited its power to consider Ibhawa's claim, but whether any of the Diocese's affirmative defenses—including the two statutory defenses raised by the Diocese—established that the case could not proceed beyond its current stage (see Hosanna-Tabor, 565 US at 195 n 4).
Because DHR erred in treating the ministerial exception as a jurisdictional bar rather than an affirmative defense, its determination was affected by an error of law. In reaching that conclusion, we express no view on whether any of the Diocese's defenses are meritorious.
Accordingly, the order of the Appellate Division should be reversed, with costs, and matter remitted to that Court with direction to remand to DHR for further proceedings in accordance with this opinion.
Order reversed, with costs, and matter remitted to the Appellate Division, Fourth Department, with direction to remand to the New York State Division of Human Rights, for further proceedings in accordance with the opinion herein. Opinion by Judge Halligan.
Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.
Decided November 26, 2024

Footnotes

Footnote 1: No party appealed the portion of Supreme Court's order denying Ibhawa's petition to reverse DHR's dismissal of his unlawful termination claim, and that issue is not before us.

Footnote 2: The Appellate Division erroneously gave "considerable deference" to DHR's determination based on "its expertise in evaluating discrimination claims" (217 AD3d at 1501). As we recently explained, "courts defer to the administrative agency where the issue involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (James, 40 NY3d at 502 [internal quotation marks omitted]). Whether the First Amendment limits the jurisdiction of DHR is a pure question of federal constitutional law, and DHR has no special expertise in resolving that issue.